**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TANETA GUTHRIE, on behalf of
JEMAL POWE,

   Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

   Defendant.

Civil Action No. 05-029 (CKK)

**MEMORANDUM OPINION**
(March 31, 2009)

Currently pending before the Court are Plaintiff's Motion for Judgment of Reversal and

Defendant's Motion for Judgment of Affirmance, respectively, of the decision of an

Administrative Law Judge ("ALJ") denying Supplemental Security Income Benefits ("SSIB") to

Plaintiff Jemal Powe, who has brought suit by and through his mother Taneta Guthrie, pursuant

to Title XVI of the Social Security Act.  After reviewing the parties' briefs, the administrative

record, and the relevant case law and statutory authority, the Court shall DENY Plaintiff's [7]

Motion for Judgment of Reversal and GRANT Defendant's [9] Motion for Judgment of

Affirmance.[1]

## I.  BACKGROUND

*A.*    *Legal Framework and Procedural History*

On January 9, 2002, Taneta Guthrie filed an application for SSIB on behalf of her son,

---

[1] Plaintiff's Complaint named as the Defendant the then-Commissioner of Social
Security, Jo Anne B. Barnhart.  As Ms. Barnhart was sued in her official capacity, the Court has
substituted the current Commissioner of Social Security, Michael J. Astrue, as the Defendant
pursuant to Federal Rule of Civil Procedure 25(d).

Jemal Powe (born in 1992), pursuant to Title XVI of the Social Security Act.  Pl.'s Mot. at 1-2; Admin. Record ("A.R.") at 17.[2]  Plaintiff's application for SSIB was based on alleged learning disabilities constituting severe functional limitations.  Pl.'s Mot. at 2; A.R. at 79.

After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing before an ALJ.  A.R. at 16, 38.  That hearing occurred on April 1, 2003, and Plaintiff was represented by counsel.  *Id.* at 16, 162.  In a decision dated May 2, 2003, the ALJ denied Plaintiff's requested benefits.  *Id.* at 13-22.   In order to place the ALJ's opinion in context, the Court sets forth below the legal framework relevant to Plaintiff's application for SSIB.

To be eligible for SSIB, a child must be disabled within the meaning of Title XVI of the Social Security Act.  20 C.F.R. § 416.901 (2008).[3]  The Social Security Administration ("SSA") will consider a child disabled if he or she has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.906.  A three-step sequential evaluation is used to determine whether a child is eligible for SSIB on the basis of a disability.  20 C.F.R. § 416.924.  This evaluation involves determining: (1) whether the child is engaged in substantial gainful activity; (2) whether the child has an impairment or a combination of impairments that is severe; and (3) whether the child has an impairment(s) that meets, medically equals, or functionally equals the listings included in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  If the child is engaged in substantial

---

[2] Plaintiff's application alleged that his disability commenced September 28, 2001, but Plaintiff subsequently amended his onset date to January 9, 2002.  Pl.'s Mot. at 1-2 & n.1; A.R. at 52.

[3] All citations to the C.F.R., or any subsection thereof, refer to the 2008 regulations unless otherwise noted.

gainful activity or does not have an impairment or combination of impairments that is severe, the child is considered not disabled and the evaluation does not progress to the next step. *Id.*

In determining whether a child's impairment(s) functionally equals a listed impairment, the SSA considers six separate "domains" or areas of functioning, which include: (1) Acquiring and using information; (2) Attending and completing tasks; (3) Interacting and relating with others; (4) Moving about and manipulating objects; (5) Caring for yourself; and (6) Health and physical well-being. 20 C.F.R. § 416.924a(b)(1)(i)-(vi). In order to functionally equal a listed impairment, a child's impairment "must be of listing-level severity; *i.e.*, it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* § 416.926a(a). A "marked" limitation exists when a child's impairment "seriously interferes" with his or her "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). The SSA describes a "marked" limitation as "more than moderate" but "less than extreme," and will generally find a "marked" limitation when a child has a "valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and [the child's] day-to-day functioning in domain-related activities is consistent with that score." *Id.* § 416.926a(e)(2)(i), (iii). An "extreme" limitation is "more than marked" but "does not necessarily mean a total lack or loss of ability to function." *Id.* § 416.026a(e)(3)(i). The SSA will generally find an "extreme" limitation when a child has a "valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and [the child's] day-to-day functioning in domain-related activities is consistent with that score." *Id.* § 416.926a(e)(3)(iii).

In the instant case, at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of the disability. A.R. at 21. At Step Two, the ALJ found that Plaintiff's "speech and language delay; and BIF [borderline intellectual functioning] are severe, within the meaning of the regulations." *Id.* at 17. At Step Three, the ALJ found that Plaintiff did not meet or medically equal Section 112.05 ("Mental Retardation") of the SSA' Childhood Listings for disability evaluation under Social Security. *See id.* at 17-18.

The ALJ then continued to consider "whether [Plaintiff] has an impairment that is functionally equivalent in severity to any listed impairment." *Id.* at 18. The ALJ discussed the relevant standards and the evidence contained in the Administrative Record, including testing results, school records, and testimony during the administrative hearing, and found that Plaintiff had "marked limitation" in the domain of Acquiring and Using Information. A.R. at 20. As to the remaining domains, the ALJ found that Plaintiff had either "less than marked limitations" or "no limitation." *Id.* at 20-21. The ALJ concluded that "[b]ecause [Plaintiff] does not have 'extreme' limitation in one area of functioning or 'marked' limitation in two areas/domains, he does not have an impairment that is functionally equivalent in severity to any listed impairment." *Id.* at 21. Finally, having determined that Plaintiff "does not have an impairment (or impairments) that meets, medically equals, or functionally equals any of the impairments listed," the ALJ concluded that Plaintiff does not have "a 'disability' as defined in the Social Security Act," and therefore is "not eligible for Supplemental Security Income payments." *Id.* at 21-22.

Plaintiff appealed the ALJ's decision, but the Appeals Council determined there was no basis for granting review. A.R. at 3-5. Having fully exhausted his administrative remedies, Plaintiff timely filed suit in this Court.

    B.    *Evidence Contained in the Administrative Record*

    The ALJ evaluated Plaintiff's condition based on evidence including testing by the

District of Columbia Public Schools ("DCPS"), DCPS student records, a Childhood Disability

Evaluation by the Social Security Administration, information provided by Plaintiff's mother,

and the testimony of Plaintiff and his mother during the administrative hearing.  No formal

medical examination is contained in the administrative record, *see* A.R. at 1-2, and nothing in the

record suggests such an examination was administered, a fact Plaintiff cited in his request for an

ALJ hearing as evidence that the social security determination was flawed, *see id.* at 38.  The

Court recounts below the most relevant portions of the administrative record.

    1.    <u>DCPS Testing and Record of Academic Achievement</u>

    The Administrative Record ("A.R.") contains Plaintiff's records from the DCPS for the

period June 6, 2001 to February 3, 2003.  A.R. at 115-128, 147-162.  According to those records,

Plaintiff was referred for evaluation "to determine his need for special education services" after

twice repeating the first grade.  *Id.* at 122.  On June 7, 2001, a DCPS School Psychologist,

Angela Jefferson, evaluated Plaintiff and determined that "[h]is general cognitive ability . . . is

borderline," and that his "verbal and performance ability scores were also in the borderline

range."  *Id.* at 124-25.  The School Psychologist conducted a series of tests, specifically the

Wechsler Intelligence Scale for Children – Third Edition ("WISC-III"), the Test of Nonverbal

Intelligence – Third Edition ("TONI-3"), and the Wechsler Individual Achievement Test

("WIAT"), and also consulted with Plaintiff's teacher.  *Id.* at 122.  The WISC-III estimated

Plaintiff's general cognitive ability as "borderline (FSIQ = 71)," and his verbal and performance

ability "in the normal range (VIQ [Verbal IQ] = 78, and PIQ [Performance IQ] = 70)."  *Id.* at

124-25.  On a "language-free measure of cognitive ability, TONI-3, [Plaintiff] received a quotient of 89 that placed him just below the average range at the 24th percentile."  *Id.* at 124. Plaintiff also performed in the below average range in mathematics, although this is an area of strength in comparison to his weaker performance areas.  *Id.* at 122-24.  The Psycho-Educational Report created from this examination concluded that Plaintiff did "not appear to meet the criteria of a student with a specific learning disability or mental retardation.  He appears to be more of a slow learner."  *Id.*  The report recommended tutoring, academic enrichment, and additional speech and language evaluation.  *Id.*

On a September 24, 2001, a DCPS Speech/Language Pathologist Linda Brown examined Plaintiff, subsequently creating a "Speech/Language Evaluation Report," based upon the results of this examination.  *Id.* at 118.  The Receptive One-Word Picture Vocabulary Test ("ROWPVT") administered during the exam indicated Plaintiff's "receptive vocabulary (how well the child understands)" was "within the normal range of development."  *Id.* at 119.  The Expressive One-Word Picture Vocabulary Test ("EOWPVT-R"), which measures the "ability to identify a single object or group of objects on the basis of a single concept," indicated Plaintiff's "expressive vocabulary skills were approximately 2.8 years delayed."  *Id.*  The Clinical Evaluation of Language Fundamentals ("CELF-3"), which is "designed to identify individuals who lack the basic foundation of content and form that characterized mature language use," indicated Plaintiff's "ability to process and understand verbal communication" was in the "severely delayed range of development."  *Id.* at 119-20.  Additionally, Plaintiff's articulation skills were "within the 'mildly' delayed range."  *Id.* at 121.  The report concluded that Plaintiff's "receptive and expressive language skills show severe deficits," warranting "therapeutic

intervention." *Id.* at 121.

Pursuant to the recommendations in these reports, a DCPS "multidisciplinary team," comprised of various educational professionals and Plaintiff's mother, met on September 28, 2001 and determined a mixed program of "general education and resource classroom" time would provide the "intensive/individualized instruction" needed given that Plaintiff was "significantly below grade level." *Id.* at 115.  An Individualized Education Program ("IEP") was created pursuant to these recommendations, noting that while Plaintiff's "receptive vocabulary skills are within normal range of development," his communication disability "affects academic performance in all areas." *Id.* at 67.  Under the IEP Plaintiff would spend approximately half his time outside of the "regular education setting," fifteen hours per week in specialized instruction and one hour per week in speech and language therapy.  *Id.* at 66.  The IEP also called for testing accommodations, specifically "extended time," working in a "small group," and "repetition of directions, simplified directions." *Id.* at 73.

On February 3, 2003, a smaller version of this multidisciplinary team met and created an updated Individualized Education Program after determining that Plaintiff "continues to be eligible for special education services as a student who is speech and language impaired." *Id.* at 151.  Plaintiff's "special education teacher reported that [he] continues to show improvement" and a "willingness to work," however his "reading skills continues [sic] to be below grade level but, [sic] he has shown some improvement." *Id.* at 160.  Under this new IEP Plaintiff was to continue spending approximately half his time outside the "regular education setting," with fifteen hours per week in specialized instruction and one hour per week in speech and language therapy.  *Id.* at 148.  Notes from the IEP review meeting also stated that Plaintiff's special

7

education teacher "feels that [Plaintiff] has made lot's [sic] of progress and should continue

[special education] services." *Id.* at 160.  An additional March 31, 2002 letter written by Sharon

M. Beverly-Gomillion, the Special Education Coordinator, discussed Plaintiff's after-school

tutoring.  *Id.* at 161.  The letter noted that Plaintiff  "has begun to show improvement but

continues to function signigicantly [sic] below grade level in both reading and mathematics," and

he "continues to need additional support in order to reach his potential."  *Id.*

The DCPS records and examinations repeatedly state that Plaintiff was cooperative,

communicative, and attentive throughout all testing.  *See, e.g., id.* at 122.

### 2. Social Security Administration Childhood Disability Evaluation

On March 7, 2002, Gomma Nachbahr, Ph.D., a Disability Determination Service

Consultant, conducted a disability evaluation of Plaintiff in connection with his application for

SSIB.  A.R. at 130-35; Def.'s Aff. Mot. at 3-4.  Dr. Nachbahr relied upon prior psycho-

educational testing, DCPS records, and information provided by Plaintiff's mother in forming

conclusions about Plaintiff's impairments.  *Id.*  Dr. Nachbahr noted the primary concern

motivating this examination was an "allegation of trouble learning in school."  *Id.* at 133.  Based

upon the evidence, Dr. Nachbahr concluded that Plaintiff suffered from a "Receptive-Expressive

Language Delay " and "Borderline Intellectual Functioning."  *Id.* at 130.

Dr. Nachbahr's report examined the evidence in relation to each of the six "domains"

relevant to determining the severity of an impairment.  *See id.* at 132-35.  Dr. Nachbahr

determined Plaintiff had a "marked" impairment in the area of "Acquiring and Using

Information," as evidenced by test results and the mother's discussion of Plaintiff's functionality

in this area.  *Id.* at 132.  Plaintiff had a "less than marked" impairment in "Attending and

Completing Tasks," as evidenced by his requiring extra time on schoolwork, completion of homework "(not necessarily on time)," completion of household chores, and attention span. *Id.* Plaintiff had a similarly "less than marked" impairment in "Interacting and Relating with Others," as evidenced by "mildly delayed" articulation skills and his generally getting along well with others. *Id.* Dr. Nachbahr found no limitations or impairments in the areas of "Moving About and Manipulating Objects," "Caring For Yourself," and "Health and Physical Well-Being." *Id.* at 135. Because "[a]n impairment functionally equals the listings if it results in 'marked and severe functional limitations,' i.e., the impairment(s) causes 'marked' limitations in two domains or an extreme limitation in one domain," Dr. Nachbahr determined that Plaintiff's alleged impairment or combination of impairments did not "functionally equal the listings." *Id.* at 134.

On March 19, 2002, Margaret A. Friel, M.D., of the Office of Disability's Office of Medical Evaluation, determined this assessment of Plaintiff's "Acquiring and Using Information Domain" to be "medically reasonable." Dr. Friel's review of the assessment agreed that "although [Plaintiff's] language ability is more poorly developed than his intellectual functioning, <u>a separate language impairment is not documented.</u>" *Id.* at 129 (emphasis in original). On April 17, 2002, Patricia Cott, Ph.D., also reviewed the report and the evidence and affirmed Dr. Nachbahr's assessment "as written." *Id.* at 130.

3.       Transcript of the Administrative Hearing in This Case

Both Plaintiff and his mother testified at the April 1, 2003 administrative hearing in this case. *See id.* at 162-81. Plaintiff testified that he was in the third grade, his favorite subject was math, and music and reading were not his favorite subjects. *Id.* at 166-67. Plaintiff also testified

that he enjoyed playing basketball, had friends in and outside of school, and had disagreements with his siblings and cousins. *Id.* at 167-69. He generally completed his chores on time, sometimes without any reminders. Plaintiff also testified that he had difficulty reading and received academic support in the form of tutoring. *Id.* at 171-72.

Plaintiff's mother testified that Plaintiff puts forth effort in school and has a positive attitude, however he was approaching age eleven and "he just can't read a [first] grade book." *Id.* at 176. She also testified that Plaintiff suffered from recurring headaches which she believed could be related to his learning difficulties, although after several visits to the doctor no condition had been found, and Plaintiff had never required hospitalization, surgeries, or pediatric involvement regarding this issue. *Id.* at 177. Plaintiff's mother repeatedly emphasized his difficulty reading. *Id.* at 175-80.

## II.  LEGAL STANDARD

"In a disability proceeding, the ALJ 'has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability.'" *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (quoting *Diabo v. Sec'y of HEW*, 627 F.2d 278, 281 (D.C. Cir. 1980)). A court will not disturb the determination of the Commissioner if it is based on substantial evidence in the record and the correct application of the relevant legal standards. 42 U.S.C. §§ 405(g), 1383(c); *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). While a scintilla of evidentiary support is insufficient, the test can be satisfied by "something less than a preponderance of the evidence." *Fla. Mun. Power Agency v.*

*FERC*, 315 F.3d 362, 365-66 (D.C. Cir. 2003).  In reviewing an administrative decision, a court

may not determine the weight of the evidence, nor substitute its judgment for that of the

Secretary if his decision is based on substantial evidence.  *Butler*, 353 F.3d at 999; *Hays v.*

*Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  While the reviewing court must carefully

scrutinize the entire record, *Butler*, 353 F.3d at 999, it is not to review the case "de novo" or

reweigh the evidence, *Ware v. Barnhart*, 357 F. Supp. 2d 134, 138 (D.D.C. 2004) (citing *Davis v.*

*Heckler*, 566 F. Supp. 1193, 1195 (D.D.C. 1983)).  Instead, the Court determines whether the

ALJ, acting for the Secretary, "has analyzed all the evidence and has sufficiently explained the

weight he has given to obviously probative material."  *Simms*, 877 F.3d at 1050.[4]  *See also*

*Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008) ("[s]ubstantial-evidence review is

highly deferential to the agency fact-finder . . . [and] [r]eversal of an agency decision under that

standard is rare").

### III.  DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed, or in the alternative remanded

to the Social Security Administration for a new hearing, and makes three arguments in support of

these requests.  First, he argues that the ALJ failed to properly consider whether his condition

met or equalled a listed impairment.  Pl.'s Mot. at 3-6.  Second, Plaintiff argues the evidence of

---

[4] Generally speaking, because "the broad purposes of the Social Security Act require a liberal construction in favor of disability, the court must view the evidence in the light most favorable to the claimant."  *Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000) (citing *Davis v. Shalala*, 862 F. Supp. 1, 4 (D.D.C. 1994)).  Nevertheless, the Court notes that in the particular context at issue here, Congress amended the definition of "disabled" for children seeking SSIB in 1996, and the that "[t]he thrust of [that] legislation was most certainly to tighten eligibility." *Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 83 (2d Cir. 2003) (citing Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193 (1996)).

record demonstrates that he satisfies Listing 112.05 of the Childhood Listings. *Id.* at 5-10.

Third, Plaintiff argues that the ALJ erroneously determined his impairment was not functionally

equivalent to any Listing. *Id.* at 10-11. Defendant disputes Plaintiff's characterization of the

ALJ's opinion, asserting that the ALJ's decision was supported by substantial evidence. *See*

*generally* Def.'s Mot.

A.   *The ALJ Properly Considered the Evidence and Explained Whether Plaintiff's*
     *Condition Met or Equaled a Listed Impairment*

Plaintiff's first argument is that the ALJ did not properly consider whether Plaintiff's

condition met or medically equaled a listed impairment because the ALJ "failed in his duty of

explanation . . .fail[ing] in any manner to discuss whether or not the Plaintiff's condition met or

equaled the requirements of any Listed Impairment," Pl.'s Mot. at 3-4, and as result "the [ALJ's]

conclusory statement makes it impossible for the Court to exercise its duty of review," *id.* at 5.

This appears to be a procedural, rather than substantive, argument. The ALJ is not required to

specifically address each criteria of a relevant Listing, but rather must provide "a statement of []

findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law,

or discretion presented on the record." *Id.* at 4 (citing 5 U.S.C. § 557(c)); *see also Ware*, 357 F.

Supp. 2d at 139 n.4 ("The plaintiff argues specifically that the ALJ inadequately explained his

decision by failing to reference the particular elements of Listing 112.04 . . . However, the

plaintiff does not cite any case requiring this level of detail."). Plaintiff does not cite any case

law indicating a different or heightened standard of explanation is required. *See generally* Pl.'s

Mot. Plaintiff does cite cases where courts found the ALJs' consideration of whether a plaintiff's

condition met or medically equaled a listed impairment to be insufficient. However, the ALJs'

opinions in those cases either failed to consider significant probative evidence without

explanation, *see Martin v. Apfel*, 118 F. Supp. at 14 (D.D.C. 2000) ("the ALJ's failure to consider

this uncontradicted, probative evidence that goes to the very heart of the case before him dooms

his opinion"); *Taylor v. Heckler*, 595 F. Supp. 489, 492 (D.D.C. 1984) ("[t]he ALJ's failure to

evaluate probative evidence submitted by plaintiff or to explain why he deemed [the claim] not

credible is 'good cause' to reverse"), or offered only a general conclusion that the plaintiff's

conditions did not meet or medically equal *any* listed impairment without identifying the relevant

Listings considered, *see Davis v. Shalala*, 862 F. Supp. 2d at 6 ("neither the ALJ in his written

decision, nor the Appeals Council, appear to have considered Listing 1.12 . . . the ALJ made a

general finding that the evidence failed to establish that the Plaintiff's impairments meet or equal

any Listing."). *See also Rossello*, 529 F.3d at 1186 (reversing decision of the appeals counsel

where it "cited no evidence to undermine the only conclusion that the record permits").

In contrast, the ALJ in this case specifically identified the relevant Listing – 20 C.F.R.

Part 404, Subpart P, Appx. 1 § 112.05, "Mental Retardation,"[5] – and found "the evidence of

record fails to document a listing level impairment." A.R. at 17-18. The ALJ noted this

conclusion is consistent with the testing results–"no treating or examining physician has

medically supported the [claim] and none is found [in the evidence of record]," A.R. at 18–and

with the recommendations of Social Security and DCPS psychological consultants, A.R. at 20.

In making his determination regarding Plaintiff's condition, the ALJ acknowledged "per clinical

testing by the [Plaintiff]'s school psychologist (Exhibit 6F), [Plaintiff] has BIF [Borderline

---

[5] Although the ALJ also recognizes Listing 112.02, "Organic Mental Disorders," the
opinion indicates he appropriately recognized that elements of this Listing are considered within
certain prongs of Listing 112.05, *e.g.* 112.05(F). *See* A.R. at 17.

13

Intellectual Functioning], with low IQ scores (70 Performance; 78 Verbal; 71 Full-scale).

[Plaintiff] also has had an Individualized Education Plan developed for specialized education

with speech and language therapy (Exhibit 7F)."  A.R. at 17.

The ALJ further supported his conclusions by reviewing the six "domains" set forth in 20

C.F.R. § 416.926a and the relevant evidence in the record related to each.  A.R. at 20-21.

Reviewing evidence relevant to the domain of "Acquiring and Using Information," 20 C.F.R. §

416.926a(g), the ALJ referenced Plaintiff's IEP and the clinical testing performed by the school

psychologist, specifically findings that "[Plaintiff] has BIF, with low IQ scores (70 Performance;

78 verbal; 71 Full-Scale)," from which the ALJ concluded that Plaintiff has a "marked limitation

in this domain."  A.R. at 20.  In the domain of "Attending and Completing Tasks," 20 C.F.R. §

416.926a(h), the ALJ referenced school reports indicating Plaintiff "requires assistance and time

to complete any assignment," a report by Plaintiff's mother that he "completes housework (but

not necessarily always on time), completes chores most of the time, and keeps busy on his own,"

as well as Plaintiff's "appropriate attention span throughout clinical testing," and his "attention

and concentration at the hearing;" from which the ALJ concluded Plaintiff "has less than marked

limitations in this area."  A.R. at 20.  In the domain of "Interacting and Relating with Others," 20

C.F.R. § 416.926a(i), the ALJ noted that Plaintiff's articulation skills were "mildly delayed" and

"[his] mother has reported [Plaintiff] has friends his own age and is generally able to get along

with others except school teachers and is not a disciplinary problem," indicating "less than

marked limitations in this area."  A.R. at 20.  In the domains of "Moving and Manipulating

Objects," 20 C.F.R. § 416.926a(j), "Caring for Oneself," 20 C.F.R. § 416.926a(k), and "Health

and Well-being," 20 C.F.R. § 416.926a(l), the ALJ found Plaintiff has "no limitations."  A.R. at

20-21.

These are not "conclusory statements," *cf. Rice v. Massanari*, 2002 U.S. Dist. LEXIS 15250 (D.D.C. Aug. 16, 2002), as asserted by Plaintiff, but rather is evidence cited by the ALJ supporting his decision and explaining his reasoning.  *See Conway v. Astrue*, 2008 U.S. Dist. LEXIS 4109 at *22-*24 (D.D.C. May 23, 2008) (Kollar-Kotelly, J.) (holding the ALJ's use of the plaintiff's IQ scores, school records, and educational program to have provided substantial evidence supporting a determination that plaintiff did not meet or medically equal the relevant Listing).  The ALJ's opinion demonstrates that he appropriately "weighed positive and negative facts included in [] different reports about [plaintiff's] condition against the criteria that must be examined under each of the six domains."  *Ware v. Barnhart*, 357 F. Supp. 2d 134, 139 (D.D.C. 2004); *see* A.R. at 16-22.  "By considering this array of evidence [including test scores and reports from physicians and a school instructor] and listing it as support for his benefits decision, the ALJ adequately reviewed the plaintiff's claims."  *Ware*, 357 F. Supp. 2d at 139 (citations omitted).  The Court therefore rejects Plaintiff's argument that "the Administrative Law Judge provided no explanation for his determination that the Plaintiff's impairment did not meet or equal an impairment listing."  Pl.'s Mot. at 4.

> B.    *The ALJ's Conclusion That Plaintiff's Condition Did Not Meet or Medically Equal a Listed Impairment Is Supported By Substantial Evidence*

Plaintiff next argues the ALJ's opinion is substantively erroneous because "the medical evidence reveals that the Plaintiff satisfies the criteria of Listings 112.05D, 112.05E, and 112.05F."  Pl.'s Mot. at 6.  Listing 112.05, "Mental Retardation," states that the required level of severity for an impairment is met when the requirements in section A, B, C, D, E, or F of the

Listing are satisfied. *See* 20 C.F.R. Part 404, Subpart P, Appx. 1, § 112.05. Plaintiff argues that

he satisfies the criteria of Listings 112.05(D), 112.05(E), and 112.05(F). Listing 112.05(D) is

satisfied by a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other

mental impairment imposing an additional and significant limitation of function." *Id.* §

112.05(D). Listing 112.05(E) is satisfied by a "valid verbal, performance or full scale IQ of 60

through 70 and . . . [f]or children (age 3 to attainment of age 18), resulting in at least one of

paragraphs B2b or B2c or B2d of 112.02." *Id.* § 112.05(E). In turn, paragraphs B2b, B2c, and

B2d of Listing 112.02 involve:

> b. Marked impairment in age-appropriate social functioning, documented by
> history and medical findings . . . and including, if necessary, the results of
> appropriate standardized tests; or
>
> c. Marked impairment in age-appropriate personal functioning, documented by
> history and medical findings . . . and including, if necessary, the results of
> appropriate standardized tests; or
>
> d. Marked difficulties in maintaining concentration, persistence, or pace.

*Id.* § 112.02B2. Finally, Listing 112.05(F) is met by the satisfaction of Listing 112.02B2a, which

involves "[m]arked impairment in age appropriate cognitive/communicative function,

documented by history and medical findings . . . and including, if necessary, the results of

appropriate standardized tests," *id.* § 112.02B2a, and "a physical or other mental impairment

imposing an additional and significant limitation of function," *id.* § 112.05F2.

In reviewing the ALJ's decision, "as long as substantial evidence supports the ALJ's

finding, the ALJ's ruling must be upheld." *Ware*, 357 F. Supp. 2d at 139.

> 1.   Substantial Evidence Supports the Conclusion that Plaintiff Failed the
>      Threshold Paragraph Requirement of § 112.05

Listing 112.05, which Plaintiff claims his condition satisfies, is governed by 20 C.F.R.

Part 404, Subpart P, Appx. 1, § 112.00(A): "Listing 112.05 (Mental Retardation) contains six sets of criteria [A-F]. If an impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the six sets of criteria, we will find that the child's impairment meets the listing." *Id.* (emphasis added). Listing § 112.05 imposes a "dual requirement," *Blakes v. Barnhart*, 331 F.3d 565, 570-71 (7th Cir. 2003), under which the plaintiff may satisfy the criteria (A-F) but be found not mentally retarded for failing to demonstrate significantly subaverage general intellectual functioning "in addition to the specific requirements of each Listing," *Vazquez v. Barnhart*, 2005 U.S. Dist. LEXIS 22243, *22 (S.D.N.Y. 2005). The first paragraph thus serves as "the threshold requirement for listing 112.05 (significantly subaverage general intellectual functioning with deficits in adaptive functioning)." *Jefferson v. Barnhart*, 64 Fed. App'x. 136, 138 (10th Cir. 2003). Plaintiff's argument that he satisfies any Listing under 112.05 is therefore inadequate if the record indicates Plaintiff failed to demonstrate "significantly subaverage general intellectual functioning."

Substantial evidence supports a finding that Plaintiff failed to meet this diagnostic description of mental retardation. The ALJ found that the IQ scores pointed to by Plaintiff, *see* Pl.'s Mot. at 6-8, and cited in the ALJ opinion, *see* A.R. at 17, did not clearly demonstrate that Plaintiff was mentally retarded, but rather indicated "borderline" intellectual functioning. The school psychologist's report, based upon the same testing cited by the ALJ, *id.* at 17, concluded Plaintiff was not mentally retarded, but rather "appears to be more of a slow learner," *id.* at 139. Plaintiff's most recent IEP, A.R. at 146, also cited by the ALJ, A.R. at 17, and a letter from the school special education coordinator, A.R. at 161, discussed Plaintiff's continued academic improvement and improved communications skills. Use of such evidence by the ALJ is entirely

appropriate as *"school records are an excellent source of information concerning function and standardized testing and should always be sought for school-age children."* 20 C.F.R. Part 404, Subpart P, Appx. 1, § 112.00(C)(3).  Accordingly, the Court finds substantial evidence supports a determination that Plaintiff failed to demonstrate mental retardation under Listing 112.05, even prior to considering Plaintiff's arguments concerning Sections (D), (E), and (F) of § 112.05.

> 2.   Substantial Evidence Supports the Conclusion that Plaintiff Failed to Meet
> the Specific Requirements of §§ 112.05 D, 112.05 E, and 112.05 F

Although Plaintiff's failure to demonstrate that he possessed "significantly subaverage general intellectual functioning" is dispositive of Plaintiff's argument, Plaintiff's argument also fails because there is substantial evidence supporting the ALJ's decision that he did not satisfy the specific requirements of §§ 112.05(D), (E), and (F).  Plaintiff does not point to evidence clearly contradicting the ALJ's decision, but rather asserts his condition satisfied the specific requirements of Listings §§ 112.05(D), (E), and (F) and therefore the ALJ erred.  *See generally* Pl.'s Mot. at 5-9.  Specifically, Plaintiff claims Listings §§ 112.05(D), (E), and (F) were satisfied by his Performance IQ score of 70 in combination with claimed additional impairments.  *See* Pl.'s Mot. at 6-7.  While the ALJ acknowledged this score and Plaintiff's "marked limitation in [acquiring and using information]," A.R. at 20, he determined that Plaintiff's condition failed to meet the requirements of Listings §§ 112.05(D), (E), and (F).

For Listing 112.05(D), Plaintiff claims his "severe receptive and expressive language delays," Pl.'s Mot. at 6-7, constituted "a physical or other mental impairment imposing an additional and significant limitation of function."  20 C.F.R. Part 404, Subpart P, App'x 1, § 112.05(D); *see also id.* § 112.00(A).  To determine if a condition satisfies the Listing, an ALJ evaluates the relevant testing results and the impact of the condition on the individual, 20 C.F.R.

18

§ 416.924(a), including the capacity to treat or ameliorate the condition.  *See, e.g.*, *Pepper v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003).  Although the ALJ recognized that Plaintiff's "speech and language delay[] and BIF are severe," there is sufficient evidence in the record to support the distinction that those impairments, while limiting Plaintiff's academic performance, did not constitute a significant and additional limitation under the Listing.  In particular, Plaintiff's most recent IEP, A.R. at 148-60, and the recommendations of the examining psychologists, *id.* at 122-46, supported the ALJ's determination that Plaintiff's specific language delays, while severe, "do not meet or medically equal the criteria of any of the listed impairments," *id.* at 17, 22.  *See, e.g., Briggs v. Callahan*, 139 F.3d 606, 609 (8th Cir. 1998) ("although [plaintiff] undoubtedly has additional impairments, there has been no showing that the impairments impose a significant limitation on [plaintiff's] activities").  Plaintiff's improved performance in school through specialized instruction and speech and language therapy also evidences that his condition may not severely limit his performance.  *See, e.g., Blake v. Barnhart*, 28 Fed. Appx. 597, 600 (8th Cir. 2002).  The ALJ also found that Plaintiff's "assertions concerning the extent and limiting degree of his impairments [were] not found fully credible as to his meeting the listing level or functional equivalency for disability purposes and the same is not corroborated by the objective medical evidence."  A.R. 22.

In *Conway*, this Court held that the ALJ appropriately found that a plaintiff had a severe "learning disability" and "obesity," but nevertheless "did not meet or *medically equal* Section 112.05."  2008 U.S. Dist. LEXIS 41091 at * 6 (emphasis added).  The foregoing record evidence in this case similarly reflects substantial evidence supporting the ALJ's finding that Plaintiff's claimed additional impairments did not constitute a disability under the Listing.  This Court is

not permitted to re-weigh the significance of the evidence in the record, but rather to determine whether the ALJ's decision is supported by substantial evidence.  Based on the foregoing, the Court holds that substantial evidence supports the ALJ's finding that Plaintiff's claim fails under Listing 112.05(D).

With respect to Listing 112.05(E), plaintiff argues that his "marked difficulties in maintaining . . . pace," Pl.'s Mot. at 7-8, evidenced by his benefitting from extra time in school, A.R. at 105, 151, satisfy the second prong of the Listing.  The ALJ, however, properly considered this evidence in discussing "the domain of attending and completing tasks," 20 C.F.R. § 416.926a(h), which addresses "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities . . .," and determined that Plaintiff had "less than marked limitations in this area."  A.R. at 20.  The ALJ noted that in addition to school records highlighted by Plaintiff, "[his] mother has reported that [he] completes housework (but not necessarily on time), completes his chores most of the time, and keeps busy on his own.  [Plaintiff] also has been found to have appropriate attention span throughout clinical testing.  He demonstrated good attention and concentration at the hearing."  A.R. at 20.  Accordingly, substantial evidence supports a finding that Plaintiff's difficulties in maintaining pace did not satisfy §112.02(B)(2)(d) and therefore his claim fails under Listing 112.05(E).

As to Listing 112.05(F), Plaintiff argues his Performance IQ score in combination with his "severe expressive and receptive language delays" satisfy 112.02(B)(2)(a) and demonstrate an impairment imposing an additional and significant limitation of function.  Pl.'s Mot. at 9.  As an initial matter, unlike Listings 112.05(D) and 112.05(E), the first prong of Listing 112.05(F) is not

an IQ score requirement, but an instruction to consider relevant evidence including "historical and other information from parents or other individuals who have knowledge of the child." 112.02(B)(2)(a); *see also Neal v. Barnhart*, 405 F.3d 685, 689 (8th Cir. 2005) ("while several of the [112.05] subsections have a specific IQ requirement . . . § 112.05F, does not"). As discussed above, substantial evidence besides the IQ scores supports the ALJ's finding that Plaintiff's condition did "not medically equal the criteria of the listed impairments," A.R. at 17, and the more limited importance placed on IQ scores under this Listing only further supports such evidence. In addition, the ALJ's conclusion that Plaintiff's condition does not meet or medically equal a listed impairment is consistent with the conclusion reached in a Childhood Disability Evaluation Form completed by Gomma Nachbahr, Ph. D. on March 7, 2002, judged medically reasonable by Margaret A. Friel, M.D. on March 19, 2002, and affirmed by Patricia Cott, Ph. D. on April 17, 2002. *See* A.R. at 129-135.[6]

In sum, the Court finds that substantial evidence in the record supports the ALJ's conclusion that Plaintiff's condition does not meet or medically equal Listing 112.05. The Court therefore rejects Plaintiff's argument that the ALJ substantively erred in finding that Plaintiff's condition does not meet or medically equal Listing 112.05.

C.     *The ALJ Properly Considered Whether Plaintiff's Condition Functionally Equaled a Listed Impairment, and His Conclusion Is Supported by Substantial Evidence*

Plaintiff's final argument is that the ALJ erroneously determined that Plaintiff did not

---

[6] Plaintiff also claims that the ALJ failed to consider information in the February 3, 2003 IEP regarding his "difficulty maintaining pace . . . was not evaluated by the [ALJ]." Pl.'s Mot. at 8. To the contrary, the ALJ specifically cites that IEP, A.R. at 17 ("Exhibit 7F") and later discusses "school reports" indicating that Plaintiff requires assistance and extra time to complete assignments.

suffer a marked impairment in any domain of functioning and that, as a result, his condition did not functionally equal a listed impairment.  Pl.'s Mot. at 9-11.  For a  condition to "functionally equal" a listed impairment, 20 C.F.R. § 416.926a(a), a plaintiff "must face 'extreme' limitations in at least one area, or 'marked' limitations in two areas."  *Ware*, 357 F. Supp. 2d at 141 (citing § 416.926a(a)).  Functional equivalency is determined from the entire record, including test scores and performance in daily activities such as school.  20 C.F.R. § 416.926a(e)(4)(iii)(B); *see Scales v. Barnhart*, 363 F.3d 699, 704 (8th Cir. 2004).  Here, Plaintiff claims a "marked impairment in the acquiring and using information domain," and a "marked impairment in the domain of attending and completing tasks," which together would satisfy the criteria for functional equivalence.  A.R. at 10.  The Court finds Plaintiff's claim of a "marked impairment in the domain of attending and completing tasks" unpersuasive.  The ALJ correctly detailed the six domains relevant to functional equivalence, weighed the evidence relevant to each, and concluded that Plaintiff only had one marked limitation, in the acquiring and using information domain.  A.R. at 18-22.

Regarding the domain of attending and completing tasks, 20 C.F.R. § 416.926a(h), substantial evidence supports the ALJ's finding that Plaintiff "has less than marked limitations in this area."  A.R. at 20.  While Plaintiff argues his benefitting from "extra assistance and time" in school supports his claim, Pl.'s Mot. at 10, this is not the only information in the record relevant to this determination.  In contrast, the ALJ's opinion reviewed the entire record, citing school reports, testimony from Plaintiff's mother, and Plaintiff's attention span throughout testing and during the hearing, A.R. at 20.  The ALJ "balanced [these] facts," *Ware*, 357 F. Supp. 2d at 142, to determine that Plaintiff's limitation in this area was not marked.  Accordingly, the Court finds

substantial evidence supports a determination that Plaintiff had "less than marked limitations in this area." A.R. at 20. Additionally, although he disagrees with the ALJ's conclusion, Plaintiff fails to identify any specific procedural errors in the ALJ's evaluation of this domain. *See Conway*, 2008 U.S. Dist. LEXIS 41091 at *33-*34. Because Plaintiff claims a marked limitation in only one other domain, he fails to demonstrate the marked limitations in two domains required for functional equivalence.[7] Therefore, the Court rejects Plaintiff's argument that the ALJ erred in determining that Plaintiff's condition was not functionally equal to a listed impairment.

## IV.  CONCLUSION

Based on the foregoing review of the relevant law and the administrative record, the Court finds that the Administrative Law Judge applied the correct legal standards when he denied Plaintiff's claim for Supplemental Security Income Benefits, and that his conclusions are supported by substantial evidence. The Court shall DENY Plaintiff's [7] Motion for Judgment of Reversal and GRANT Defendant's [9] Motion for Judgment of Affirmance. This case shall be dismissed in its entirety. An appropriate Order accompanies this Memorandum Opinion.

Date:   March 31, 2009

_/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge

---

[7] It is therefore unnecessary to address Plaintiff's erroneous argument that the ALJ found "Plaintiff did not suffer a marked impairment in any domain of function." Pl.'s Mot. at 9. This contention is plainly contrary to the record as the ALJ's opinion clearly states "[Plaintiff] has marked limitation in this domain" in reference to the domain of acquiring and using information. A.R. at 20.